**STUEVE SIEGEL HANSON LLP**
Rachel E. Schwartz
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816.714.7125
Fax: 816.714.7101
schwartz@stuevesiegel.com

*Plaintiffs' Co-Lead and Interim Class Counsel*

*[additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UNITED SPECIALTY INSURANCE COMPANY SKI PASS INSURANCE LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 4:20-MD-02975-YGR<br>MDL No. 2975<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Ann C. Hoak, John Nevraumont, and Sunit Anandwala ("Plaintiffs") bring this action on behalf of themselves and all other similarly situated persons against Defendant United Specialty Insurance Company ("USIC"). Plaintiffs make the following allegations pursuant to the investigation of counsel, and based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action for breach of contract to recover amounts for the loss of use of ski passes insured by USIC. Plaintiffs' claims and those of the proposed class are supported by the written provisions of the ski pass insurance they purchased from USIC, which are materially the same for all members of the proposed class.

2. Plaintiffs and the proposed class members purchased from USIC ski pass insurance that covers the cost of each insured ski pass against the risk of not being able to use the pass due to the occurrence of a covered peril. Defendant promised to reimburse Plaintiffs and members of the proposed class for the cost of their ski passes (minus an applicable daily rate or pro-rata reduction for each day that an insured used his or her ski pass during the 2019/2020 ski season).

3. Despite unambiguous language in the insuring agreement, which is fully integrated, USIC breached its promises by failing to pay Plaintiffs and proposed class members when they were prevented from using their ski passes because of the closure of ski resorts due to the COVID-19 pandemic.

4. USIC has caused material harm to Plaintiffs and the proposed class by improperly failing to make payment.

5. On behalf of themselves and a class of similarly situated persons, Plaintiffs seek to recover compensatory damages, as well as declaratory relief.

## PARTIES

6. Plaintiff Ann C. Hoak is a resident of Vail, Colorado. Ms. Hoak purchased a ski pass for access to the mountain resorts owned and/or operated by Vail Resorts for the 2019/2020 ski season. She purchased ski pass insurance from USIC with the purchase of her ski pass.

7. Plaintiff John Nevraumont is a resident of San Leandro, California. Mr. Nevraumont purchased a ski pass for access to the mountain resorts owned and/or operated by Vail Resorts for the 2019/2020 ski season. He purchased ski pass insurance from USIC with the purchase of his ski pass.

8. Plaintiff Sunit Anandwala is a resident of Seattle, Washington. Mr. Anandwala purchased a ski pass for access to the mountain resorts owned and/or operated by Vail Resorts for the 2019/2020 ski season. He purchased ski pass insurance from USIC with the purchase of his ski pass.

9. Defendant USIC is a property casualty insurance company incorporated under the laws of the state of Delaware with its principal place of business in the state of Texas at 1900 L Don Dodson Drive, Bedford, Texas 76021.

**JURISDICTION AND VENUE**

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

11. Plaintiffs Ann C. Hoak, John Nevraumont, and Sunit Anandwala originally filed their action in the United States District Court for the District of Colorado (1:20-cv-01152-CMA-GPG). Venue is proper in the District of Colorado under 28 U.S.C. § 1391 in that Defendant resides in that judicial district and is subject to that court's personal jurisdiction and a substantial portion of the events giving rise to the causes of action occurred in that judicial district.

12. Without waiving their respective rights to request that their claims be transferred back to the court in which they originally filed pursuant to 28 U.S.C. § 1407 for trial, Plaintiffs who originally filed in the District of Colorado assert that venue is proper in this District for pre-trial multidistrict litigation proceedings under 28 U.S.C. §§ 1391 and 1407 as their actions were transferred to this District as part of coordinated pre-trial multidistrict litigation proceedings. Without waiving their respective rights to request that their claims be transferred back to the court in which they originally filed pursuant to 28 U.S.C. § 1407 for trial, venue is also proper in this District because Defendant resides in this judicial district and is subject to this Court's personal jurisdiction and a substantial portion of the events giving rise to the causes of action occurred in this judicial district. Venue is additionally proper in this District

or in the District of Colorado pursuant to the terms of the ski pass insurance policy purchased by Plaintiffs, which is attached as Exhibit A and states in relevant part: "In the event the Company [USIC] fails to pay any amount claimed to be due, the Company, at the insured's request, will submit to a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court."

## FACTUAL BACKGROUND

**The Epic Pass and Ski Pass Insurance**

13. Defendant USIC provides ski pass insurance whereby it promises its insureds coverage against loss of use of their ski passes.

14. Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts") operates 33 ski resorts throughout the United States. Vail Resorts sells "Epic Passes" promising access to skiing and snowboarding at its resorts. Consumers can purchase different types of Epic Passes: (1) annual passes for prices generally ranging from $319 to $979; (2) weekly passes for prices generally ranging from $391 to $766; or (3) day or multi-day passes for prices generally ranging from $67 to $766.

15. To induce consumers to purchase Epic Passes well in advance of the ski season, and to mitigate the risk that consumers may be unable to realize the full use of their Epic Passes, USIC pass insurance was advertised and directly offered to Vail Resorts' customers at the time they purchased their Epic Passes.

16. Upon information and belief, Vail Resorts sold hundreds of thousands of Epic Passes for the 2019/2020 ski season.

17. Upon information and belief, thousands of consumers purchased USIC ski pass insurance on their Epic Passes.

18. The website for Epic Pass identified pricing for ski pass insurance as follows, based on the type of Epic Pass purchased:

| **Pass Type** | **Adult/Teen** | **Child** |
|---|---|---|
| Epic Pass | $32 | $22 |
| Military Epic Pass – Active/Retired | $17 | N/A |

3

| | | | |
|---|---|---|---|
| 1 | Military Epic Pass – Active/Retired Dependent | $17 | $12 |
| 2 | Military Epic Pass – Veteran | $27 | N/A |
| 3 | Military Epic Pass – Veteran dependent | $27 | $17 |
| 4 | Epic Local Pass | $27 | $17 |
| 5 | Epic Day Pass | $27 | $17 |
| 6 | Summit Value Pass | $27 | $17 |
| 7 | Keystone Plus Pass | $17 | $12 |
| 8 | Park City Youth Pass | $17 | $12 |
| 9 | Tahoe Local Pass | $27 | $17 |
| 10 | Tahoe Value Pass | $17 | $12 |
| 11 | Kirkwood Pass | $27 | $17 |
| 12 | Afton Alps Pass | $17 | $17 |
| 13 | Mt. Brighton Pass | $17 | $12 |
| 14 | Wilmot Pass | $17 | $12 |

**Plaintiffs Purchased Ski Pass Insurance**

19. Plaintiffs purchased Epic Passes providing them access during the 2019/2020 ski season to the mountain resorts owned and/or operated by Vail Resorts.

20. Plaintiffs also purchased ski pass insurance from USIC for their 2019/2020 Epic Passes. A true and accurate copy of the "Certificate of Season Ski Pass Insurance" ("Certificate") is attached hereto as Exhibit A and is incorporated herein by reference.

21. The Certificate identifies USIC as the insurer of "SEASON SKI PASS INSURANCE COVERAGE UNDER MASTER POLICY NUMBER: EYHBDISP0317." The Certificate further provides: "This is to certify that the undersigned has arranged insurance as hereinafter specified and underwritten by United Specialty Insurance Company."

22. The Certificate is the "record of coverage under the plan" for each purchaser of ski pass insurance through USIC.

23. Plaintiffs are owners of ski pass insurance from USIC on the Epic Passes they purchased from Vail Resorts for the 2019/2020 ski season. Their ski pass insurance was in force at the time of the alleged loss.

24. USIC is the effective and liable insurer of Plaintiffs' Epic Passes for the 2019/2020 ski season. Likewise, USIC is the effective and liable insurer of passes purchased by persons meeting the class definition (the "Class").

**Terms of the Ski Pass Insurance**

25. The terms of the ski pass insurance purchased by Plaintiffs and members of the proposed Class are evidenced in the Certificate. The terms of the ski pass insurance are not subject to individual negotiation and are materially the same for all insureds who purchased USIC ski pass insurance, including all Plaintiffs.

26. USIC's ski pass insurance states: "We will provide insurance under the Master Policy in consideration of your payment of the Premium."

27. The Certificate provides:

> **PROPERTY INSURED AND COVERAGE LIMITS**: We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

28. The Certificate defines "Season Ski Pass" as follows:

> **SEASON SKI PASS** – means any lift ticket access pass for multiple day usage throughout the duration of the Ski/Snowboard Season.

29. The Certificate defines the "Ski/Snowboard Season" as follows:

> **SKI/SNOWBOARD SEASON** – the period starting on October 15, 2019 and ending on April 15, 2020.

30. The Certificate defines "Season Ski Pass Cost" as follows:

> **SEASON SKI PASS COST** – Means the purchase price of the Season Ski Pass.

31. The Certificate defines "Daily Rate" as follows:

> **DAILY RATE** – means $95 per day for an adult pass (age 13 and up) at all Destination Resorts except; $50 per day at Stevens Pass, Okemo, Stowe and Sunapee; $35 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. **DAILY**

   **RATE** for a child pass (age 12 and under) is $35 per day at all Destination Resorts except $15 per day at Afton Alps, Mt. Brighton and Wilmot Mtn. The DAILY RATE does not apply to Epic Day Pass. Usage reduction for Epic Day pass will be pro-rated for each usage day and if all days have been used there is no refund.

32. The Certificate defines "Covered Peril," in relevant part, as follows:

   **PERILS INSURED AGAINST**: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils <u>*occurring after the effective date of coverage:*</u>

     a) Sickness, Injury or death of you or a Family member; …

     e) you are subpoenaed, required to serve on a jury, hijacked, **<u>quarantined</u>** or your travel visa is denied; …

(emphasis added)

33. The Certificate defines "Loss" as follows:

   **LOSS** – means your inability to use your Season Ski Pass due to an unforeseen event, occurrence or circumstance.

34. The Certificate states:

   **VALUATION:** The value of the Season Ski pass will be determined at the time of Loss and will be the Season Ski Pass Cost minus the applicable Daily Rate for each day (or portion thereof) that you have used of your Season Ski Pass during the Ski/Snowboard Season.

35. Although USIC included definitions for many terms in the Certificate, USIC could have but chose not to include a definition for the word "quarantined."

36. The term "quarantine" is commonly understood to mean: "to detain in or exclude by quarantine," "to isolate from normal relations," "a restraint upon the activities or communication of persons…designed to prevent the spread of disease…," "the situation of being kept away from others to prevent a disease from spreading," "to exclude, detain, or isolate for political, social, or hygienic reasons," and "a system of measures maintained by governmental authority at ports, frontiers, etc., for preventing the spread of disease." *See* www.merriam-webster.com/dictionary/quarantine; www.dictionary.com/browse/quarantine.

37. As the above definitions indicate, "quarantine" is commonly understood to be associated with measures aimed at the restraint of activities of persons to prevent the spread of a disease. www.merriam-webster.com/words-at-play/coronavirus-words-guide/self-quarantine. Indeed, where

6
CONSOLIDATED CLASS ACTION COMPLAINT
Case No.: 4:20-MD-02975-YGR

there is uncontrolled and large-scale community spread, as in the case of a pandemic, individuals may be quarantined through a number of measures, including restricting access to areas where they may otherwise be permitted to publicly gather. *See, e.g.*, Institute of Medicine 2004, Learning from SARS: Preparing for the Next Disease Outbreak: Workshop Summary, Washington, D.C., The National Academies Press, https://www.ncbi.nlm.nih.gov/books/NBK92450/ ("Quarantine encompasses a range of strategies . . . . Quarantine activities can range from only passive or active symptom monitoring or short-term voluntary home curfew, all the way to cancellation of public gatherings, closing public transportation, or, under extreme circumstances, to a *cordon sanitaire:* a barrier erected around a geographic area, with strict enforcement prohibiting movement in or out." (emphasis in original)).

38. Under the heading "**EXCLUSIONS**," the Certificate states: "We do not cover any Loss caused by or resulting from" a lengthy list of events and actions. There are no applicable exclusions for viruses, pandemics, related government and health orders and directives, or actions taken by Vail Resorts, independently or pursuant to such government and health orders and directives. USIC could have but chose not to exclude losses related to quarantines caused by viruses, pandemics, government and health orders and directives or actions taken by Vail Resorts in response to viruses, pandemics, and/or government health orders and directives.

39. Some of the Perils Insured Against, such as a claim based on "Sickness," require a claimant to provide "certificat[ion] by a Physician at the time of Loss." There is no such requirement in the contract for a claim based on quarantine.

**Plaintiffs' Losses**

40. The President of the United States, and state and local authorities throughout the United States, including the locations where ski resorts owned by Vail Resorts operate, issued various orders and directives related to the COVID-19 pandemic, and limiting human contact and restricting travel and activities.

41. For instance, Eagle County, Colorado—where Plaintiff Hoak resides and the location of the Vail Ski Resort owned by Vail Resorts—filed a local disaster emergency declaration with the state of Colorado on March 7, 2020, in response to the arrival of COVID-19 in that county.

42. Likewise, the Governor of Colorado, like the governors of other states and representatives of local governments, municipalities, and counties around the United States, declared a state of emergency as a result of COVID-19, and on March 11, 2020, issued executive order D 2020 003, declaring a disaster emergency due to the presence of COVID-19 in Colorado.

43. On March 12, 2020, in response to the community spread of COVID-19, the Eagle County Public Health Department, like the health departments of states, municipalities, and counties around the United States, issued a public health order imposing restrictions on social gatherings.

44. Thereafter, on March 14, 2020, having "been closely tracking every new development related to coronavirus (COVID-19) and hav[ing] been in constant contact with local health officials for guidance," Vail Resorts announced it was closing all its mountain resorts in response to the COVID-19 pandemic beginning on March 15, 2020 through March 22, 2020, and would "reassess our approach for the rest of the season." *See* "Update on Vail Resorts Operations from CEO Rob Kratz," https://www.snow.com/info/covid-19-update.aspx.

45. That same day, the Governor of Colorado issued Executive Order D 2020 004 ordering the closure of downhill ski resorts "due to the presence of COVID-19 in the State of Colorado."

46. On March 17, 2020, Vail Resorts made the decision to extend closure of its North American resorts for the entirety of the 2019/2020 season "amidst the continued challenges associated with the spread of coronavirus (COVID-19)." *See* Vail Resorts' March 17, 2020, news release, "Vail Resorts to Close North American Resorts for the 2019-20 Ski Season," http://investors.vailresorts.com/news-releases/news-release-details/vail-resorts-close-north-american-resorts-2019-20-ski-season.

47. Vail Resorts explained it made its decision "[g]iven the escalating concerns surrounding the global spread of COVID-19 and the potential impact that continuing to operate our resorts would have on our community medical systems," and acknowledged its efforts to "work to contain the spread of COVID-19 with a focus on the health and safety of our employees, guests and communities." *See* Vail Resorts' March 18, 2020, news release, "Vail Resorts Provides Updated Commentary on COVID-19 Impact," http://investors.vailresorts.com/news-releases/news-release-details/vail-resorts-provides-updated-commentary-covid-19-impact.

48. As a result of the closure, which was intended to prevent the spread of the COVID-19 virus, Plaintiffs were excluded from entering upon and using the facilities of any of Vail Resorts' properties and deprived of the use of their Epic Passes.

49. Vail Resorts' decision to shut down its resort locations and exclude its passholders was a "quarantine"—given the commonly understood meaning of that term—as it was a measure aimed at restricting access of Epic Pass holders from publicly gathering at resort locations to prevent further spread of COVID-19.

50. As set forth in the Certificate, this was a Peril Insured Against by USIC and Plaintiffs are entitled to receive from USIC payment of the cost of their Epic Passes less the applicable "Daily Rate" for each day that they used their Epic Passes during the ski/snowboarding season.

**USIC Denies Coverage**

51. USIC is on notice of the COVID-19 pandemic and Vail Resorts' closure of ski resorts throughout North America, which has prevented access to Vail Resorts' ski resorts to all Epic Pass holders.

52. USIC is on notice of Plaintiffs' and the Class's loss of use of their Epic Passes.

53. Although the Certificate identifies coverage for loss of use of Epic Passes for Plaintiffs and the proposed Class under the circumstances here, USIC has stated through its agents that it will not provide coverage for the March 14, 2020, closure of Vail Resorts' ski resorts.

54. Through its agents, USIC therefore has confirmed that any filing of notice of loss related to the March 14, 2020, closure of Vail Resorts' ski resorts would be futile.

55. Specifically, the Certificate provides that any notice of loss should be made to American Claims Management ("ACM") by mail, email, or by report online via smartphone or computer at https://www.acmclaims.com/secureforms2/claim/vail.

56. That link opens a form that states at the top:

Reminder

**There is no coverage under the insurance policy for Resort Closure. We suggest you go to the 2019/2020 Pass Holder Credit section of epicpass.com for more information prior to filing a claim.**

9
CONSOLIDATED CLASS ACTION COMPLAINT
Case No.: 4:20-MD-02975-YGR

https://portal.acmclaims.com/secureforms2/claim/vail (emphasis and color original).

57. Likewise, Vail Resorts informed Epic Pass purchasers that ski pass insurance would not provide coverage related to the COVID-19 resort closures. *See* https://www.epicpass.com/info/epic-coverage.aspx (May 18, 2020 prior to update) (stating: "We understand that as a result of the disruption caused by the COVID-19 pandemic, many of you may be feeling uncertain about your future plans. **We also recognize that our passes, and Pass Insurance, historically have not provided refunds in situations like the COVID-19 pandemic.**" (emphasis added)).

58. Through its public declaration that the COVID-19 related resorts closure was not covered under the Certificate, USIC has waived any notice requirements in the Certificate and/or any claim process identified in the Certificate.

59. Regardless of these public statements that the closure of all Vail Resorts was not covered by ski pass insurance and the futility of filing individual claims, a number of Class members still completed the claim form and provided requested information to USIC through its authorized representative ACM, as identified in the Certificate, including providing any requested documentation to ACM within 90 days after the covered Loss occurred.

60. Plaintiff Hoak is one of the Class members who submitted such a claim. Attached as Exhibit B is ACM's April 10, 2020 letter acknowledging receipt of Ms. Hoak's claim ("Acknowledgement Letter").

61. By separate letter also dated April 10, 2020, ACM provided Ms. Hoak with a "Coverage Position," which is attached as Exhibit C. This letter states that ACM had "carefully reviewed the insurance policy referenced above as well as the factual basis of the presented claim" but was not making payment or recommending payment because it was still determining whether coverage exists.

62. The Coverage Position sent by ACM further asserted as follows (emphasis in original):

> In review, the concern of contracting the virus may not be covered under peril (a) because it is not considered **Sickness**, as defined by the policy, unless your physician certifies you actually contracted the disease. The policy may not provide you reimbursement for governmental authority(s) recommendation or to avoid, or bars travel, and/or "hold in place".
>
> Anxiety, depression, psychological disorders, etc., experienced due to concerns of the virus, travel restrictions imposed, causing the inability to use your pass could disqualify any reimbursement pursuant to **exclusion (d).**

> Further, Vail's decision to close their resorts due to the concern of COVID-19 may not be covered under peril (d) since the reason of the closure is not a **Natural Disaster** as that term is defined by the policy.
>
> In regard to peril (i), in the event a student's school closed early and the student returned home for on-line classes, it is possible no coverage exists for that cause of losing the ability to use the ski/snowboard season pass.

63. The Coverage Position concluded by stating USIC's position as follows:

> At this time, a final coverage determination has not been made whether pass holders with insurance will receive a reimbursement.

64. The Coverage Position failed to address and ignored altogether peril (e), which expressly provided coverage if the insured was "quarantined."

65. Finally, in a May 7, 2020 "Denial Letter," attached hereto as Exhibit D, ACM informed Ms. Hoak that "[b]ased upon review of the Policy issued to you by USIC, we regret to inform you there is no coverage provided for your claims under the USIC Certificate of Season Ski Pass Insurance."

66. The Denial Letter further asserted, in part, as follows (emphasis in original):

> Your file was designated as one filed due to either Vail Resort's early closing of their North American Resorts, domestic, and international travel restrictions imposed due to the COVID-19 pandemic, or other reason(s), not including contraction of the virus, but associated with COVID-19.
>
> …
>
> The Policy does not provide reimbursement for governmental authority(s) recommendation to avoid and/or bars domestic travel, and/or "hold in place...
>
> In further review, the concern of you or a family member contracting the virus is not covered under **peril (a)** because it is not "Sickness", as that term is defined by the Policy. In the event your "Physician" certified you or a family member contracted the disease, please have your "Physician" complete the medical form previously sent to you and return it to our office for our review and further determination of coverage.
>
> In the event of quarantine, as mentioned by **peril (e)**, coverage may apply in the event you are diagnosed as having or suspected of having COVID-19. If you are quarantined, by "Physician's" orders, before March 15, 2020, provide us with your "Physician's" certification that your "Physician" placed you in quarantine. We will review the "Physician's" order to determine whether coverage applies.

> Further, Vail Resorts' decision to close their resorts due to the concern of COVID-19 is not covered under **peril (d)** since the reason of the closure is not a "Natural Disaster" as defined by the Policy.
>
> Please also note that anxiety, depression, psychological disorders, etc., experienced due to concerns of COVID-19, or travel restrictions imposed, causing the inability to use your pass will disqualify any reimbursement pursuant to **exclusion (d)**.

67. While the Denial Letter referenced the word "quarantine," it ignored the commonly understood meaning of the word and that Plaintiff and Class members were excluded from the resorts because of Vail Resorts' decision to close the resorts to prevent COVID-19 from spreading.

68. Instead, the Denial Letter redefined the term and now required claimants to "provide us with your 'Physician's' certification that your 'Physician' placed you in quarantine," when the plain language of the ski pass insurance did not ever require any such physician's order for a claim based on quarantine.

69. Ms. Hoak exhausted USIC's claim process to no avail and, consistent with the Certificate's "Legal Action Against Us" provision, she is bringing this action against USIC.

70. Ms. Hoak was denied coverage not based on any personal or individual reasons. Her denial is consistent with public declarations made by USIC that it will not provide coverage in this situation, making the submission of additional claims to USIC by similarly situated Class members futile.

71. USIC's denial is improper and in breach of the plain terms of the Certificate.

72. Plaintiffs and other purchasers of USIC's pass insurance are entitled to coverage as a result of their exclusion from Vail Resorts due to the COVID-19 pandemic, but USIC has failed to make payment without just cause or excuse.

## CLASS ACTION ALLEGATIONS

73. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiffs bring this action on behalf of themselves and all others similarly situated, and seek to represent the following Class:

> All persons in the United States: (1) who purchased an Epic Pass (or Epic Passes) for the 2019/2020 ski season, and (2) who purchased ski pass insurance from USIC on their 2019/2020 Epic Pass(es).

74. Excluded from the Class are USIC, any entity in which USIC has a controlling interest, any of the officers, directors, or employees of USIC, the legal representatives, heirs, successors, and assigns of USIC, anyone employed with Plaintiffs' counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

75. Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

76. The persons who fall within the Class number in at least the hundreds, and most likely thousands, and thus the numerosity standard is satisfied. Because Class members are geographically dispersed across the country, joinder of all Class members in a single action is impracticable.

77. Class members are readily ascertainable from information and records in USIC's possession, custody, or control. Notice of this action can readily be provided to the Class.

78. There are questions of law and fact common to the claims of Plaintiffs and the Class that predominate over any questions affecting only individual Class members. The questions of law and fact arising from USIC's actions that are common to the Class include, without limitation:

   a. Whether the order and directive from Vail Resorts closing its resorts in the United States, and excluding Epic Pass holders from those resorts, constituted a Covered Peril, as a "quarantine," under the terms of USIC's ski pass insurance agreements;

   b. Whether orders and directives from the many governmental and health authorities throughout the United States, which restrained travel and excluded participation in certain activities due to the presence of COVID-19, constituted a Covered Peril, as a "quarantine," under the terms of USIC's ski pass insurance agreements;

   c. Whether Defendant breached the terms of its ski pass insurance agreements with Class members;

   d. Whether the Class sustained damages as a result of USIC's breaches of contract;

   e. Whether the Class is entitled to damages, restitution, and/or other equitable relief; and

   f. Whether the Class is entitled to declaratory relief stating the proper construction and/or interpretation of USIC's ski pass insurance agreement.

79. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

80. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the Class members all purchased ski pass insurance containing the same or similar terms including, in particular, what constitutes a Covered Peril.

81. Plaintiffs will fairly and adequately protect and represent the interests of the proposed Class because their interests are aligned with, and not antagonistic to, those of the proposed Class. They are represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

82. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class to bring a separate action. Because of the relatively small size of an individual Class member's claims, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I: BREACH OF CONTRACT

83. The preceding paragraphs are incorporated by reference as if fully alleged herein.

84. Plaintiffs and each member of the proposed Class purchased ski pass insurance from Defendant.

85. The ski pass insurance agreement, as evidenced by the Certificate, is a valid and enforceable contract between USIC and Plaintiffs and Class members.

86. Plaintiffs and Class members substantially performed their obligations under the terms of the ski pass insurance agreement.

87. Plaintiffs and Class members suffered a Loss from a Covered Peril.

88. USIC has failed to compensate Plaintiffs and Class members for their respective Losses as required by the ski pass insurance agreement.

89. As a direct and proximate result of USIC's breaches, Plaintiffs and the Class have sustained damages that are continuing in nature in an amount to be determined at trial.

**COUNT II: DECLARATORY RELIEF**

90. The preceding paragraphs are incorporated by reference as if fully alleged herein.

91. An actual controversy has arisen and now exists between Plaintiffs and the Class, on the one hand, and USIC, on the other, concerning the respective rights and duties of the parties under the ski pass insurance agreement.

92. Plaintiffs contend that USIC has breached its agreement by failing to timely pay Class members for their respective Losses by reimbursing each member of the Class for the value of the Epic Pass cost as set forth in the ski pass insurance agreement.

93. Plaintiffs, therefore, seek a declaration of the parties' respective rights and duties under the ski pass insurance agreement and request the Court to declare the aforementioned conduct of USIC unlawful and in material breach of the ski pass insurance agreement so that future controversies may be avoided.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief and judgment against USIC as follows:

(a) For an order certifying the Class, appointing Plaintiffs as representatives of the Class, appointing Plaintiffs' counsel as Class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

(b) For a judgment against USIC for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that USIC's conduct as alleged herein is unlawful and in material breach of its ski pass insurance agreement;

(e) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f) For Plaintiffs' attorney's fees;

(g) For Plaintiffs' costs and/or expenses; and

(h) For such other relief in law or equity as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 24, 2020       By:       */s/ Rachel Schwartz*
Rachel Schwartz (KS Bar # 21782)
schwartz@stuevesiegel.com
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

John J. Schirger (MO Bar # 60583)
jschirger@millerschirger.com
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Tel: 816-561-6500
Fax: 816-561-6501

*Plaintiffs' Co-Lead and Interim Class Counsel*