Thomas J. Cahill (admitted *pro hac vice*)
tjcahill@duanemorris.com
James J. Regan (admitted *pro hac vice*)
jjregan@duanemorris.com
**DUANE MORRIS LLP**
230 Park Avenue, Suite 1130
New York, NY 10169-0037
Tel: +1 212 404 8735
Fax: + 1 212 818 9606

Justin J. Fields (SBN 259491)
jfields@duanemorris.com
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Tel: +1 415 957 3000
Fax: +1 415 957 3001

Attorneys for Defendant
UNITED SPECIALTY INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: UNITED SPECIALTY INSURANCE COMPANY SKI PASS INSURANCE LITIGATION<br><br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No.: 4:20-md-02975-YGR<br><br>MDL No. 2975<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　　March 30, 2021<br>Time:　　　　2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge:　　　Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed: December 24, 2020 |

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION　　　　CASE NO. 4:20-MD-02975-YGR
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on March 30, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Yvonne Gonzalez Rogers, Courtroom 1 of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, defendant United Specialty Insurance Company will and hereby does move for an order dismissing the Consolidated Class Action Complaint (Doc. 20) in its entirety for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, request for judicial notice with attached exhibits, as well as the papers, records, and pleadings on file in this action.

Dated:  January 22, 2021

**DUANE MORRIS LLP**

By: ____/s/ Justin J. Fields_____
Thomas J. Cahill (admitted *pro hac vice*)
James J. Regan (admitted *pro hac vice*)
Justin J. Fields

Attorneys for Defendant
UNITED SPECIALTY INSURANCE
COMPANY

# TABLE OF CONTENTS

**Page No.**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 7

INTRODUCTION ..................................................................................................................... 7

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 9

ARGUMENT ........................................................................................................................... 11

    I.      PLAINTIFFS HAVE NOT PLEADED FACTS PLAUSIBLY SHOWING A COVERED LOSS UNDER THE POLICY ......................................................... 11

           1.      Plaintiffs have not pleaded a loss while coverage was in effect ............... 15

           2.      Plaintiffs have not alleged facts establishing the occurrence of a covered peril .................................................................................................. 16

               a.    There is no coverage for resort shutdown due to pandemic ..................... 16

               b.    The Policy covers quarantining only if targeted at a specific insured ski pass holder ....................................................................................... 17

               c.    There are no facts pleaded that any plaintiff was quarantined ................. 20

           3.      Plaintiffs do not allege facts plausibly showing causation ....................... 22

    II.     BECAUSE THE POLICY DOES NOT PROVIDE COVERAGE, THE CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED ............. 24

CONCLUSION ........................................................................................................................ 24

1

## TABLE OF AUTHORITIES

2

**Page No(s).**

3

**Federal Cases**

4

*Adams v. Hartford Cas. Ins.*
No. CV 15-05700, 2015 WL 12642305 (C.D. Cal. Nov. 23, 2015)..............................................20

5

*Amato v. Elicker*
460 F. Supp. 3d 202 (D. Conn. 2020) ......................................................................................19

6

7

*Antietam Battlefield KOA v. Hogan*
461 F. Supp. 3d 214 (D. Md. 2020) ....................................................................................19, 22

8

*Axis Reins. Co. v. Telekenex, Inc.*
913 F. Supp. 2d 793 (N.D. Cal. 2012) ......................................................................................12

9

10

*Brosamer & Wall, Inc. v. Indian Harbor Ins. Co.*
2020 WL 1031139 (N.D. Cal. 2020) .........................................................................................18

11

12

*Cassell v. Snyders*
458 F. Supp. 3d 981 (N.D. Ill. 2020) ..................................................................................18-19, 22

13

14

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*
959 F. Supp. 1213 (C.D. Cal. 1997) ..........................................................................................13

15

*County of Butler v. Wolf*
__ F. Supp. 3d __, No. 2:20-cv-677, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020) .............19, 21

16

17

*Founder Inst. Inc. v. Hartford Fire Ins.*
__ F. Supp. 3d __, No. 20-cv-04466, 2020 WL 6268539 (N.D. Cal. Oct. 22, 2020)...................16

18

19

*Graham Plumbing & Drain Cleaning Inc. v. Colony Ins. Co.*
No. ED CV 19-1130, 2019 WL 6482920 (C.D. Cal. Oct. 17, 2019)............................................15

20

*Hints v. Am. Family Life Assur. Co.*
No. 4:19-cv-03764-YGR, 2020 WL 2512234 (N.D. Cal. May 15, 2020)....................................13

21

22

*Kime v. Adventist Health Clearlake Hosp.*
254 F. Supp. 3d 1071 (N.D. Cal. 2018) ....................................................................................11

23

24

*Liberian Community Ass'n v. Lamont*
970 F.3d 174 (2d Cir. 2020)......................................................................................................19

25

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co.*
__ F. Supp. 3d __, No. 2:20-cv-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ...............24

26

27

*McGhee v. City of Flagstaff*
No. CV-20-08081, 2020 WL 2308479 (D. Ariz. May 8, 2020) ........................................19, 21-22

28

4

*Mesa Underwriters Specialty Ins. v. Hyds, Inc.*
   No. CV 19-5792, 2020 WL 2608148 (C.D. Cal. May 14, 2020) ................................22

*Morris v. Allstate Ins. Co.*
   16 F. Supp. 3d 1095 (C.D. Cal. 2014) ..................................................................14, 18

*Mudpie, Inc. v. Travelers Cas. Ins.*
   __ F. Supp. 3d __, No. 20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14,
   2020) ....................................................................................................................12, 24

*Murphy v. Lamont*
   No. 3:20-CV-0694, 2020 WL 4435167 (D. Conn. Aug. 3, 2020) ..........................19, 22

*P & S, LLC v. Nat'l U. Fire Ins. Co.*
   No. 14-cv-00735, 2015 WL 4550322 (D. Colo. July 29, 2015), *aff'd*, 650 Fed.
   App'x 561 (10th Cir. 2016) ........................................................................................11

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*
   __ F. Supp. 3d __, No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ...............12, 24

*Peterson Transp. v. Hudson Ins. Co.*
   No. CV 20-663, 2020 WL 8028614 (C.D. Cal. June 1, 2020) ....................................14

*Sony Computer Ent. Am., Inc. v. Am. Home Assurance Co.*
   532 F.3d 1007 (9th Cir. 2008) .............................................................. 12-13, 16, 18, 20

**California Cases**

*Ex parte Culver*
   187 Cal. 437 (1921) ...................................................................................................19

*Garvey v. State Farm Fire & Cas. Co.*
   48 Cal. 3d 395 (1989) ...............................................................................................14

*State of Cal. v. Cont'l Ins. Co.*
   55 Cal. 4th 186 (2012) ...............................................................................................13

*Waller v. Truck Ins. Exch., Inc.*
   11 Cal. 4th 1 (1995) ........................................................................................ 13-14, 17

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................2, 11

**Treatises**

Croskey, et al., *California Practice Guide: Insurance Litigation* § 6:250 .........................14

**Non-Periodical Publications**

*American Heritage Dictionary of the English Language* ....................................................................18

Plitt, et al., *Couch on Insurance* § 102:2..............................................................................................15

Defendant's Notice of Motion and Motion to dismiss Class Action
Complaint; Memorandum of Points and Authorities in support Thereof\

Case No. 4:20-md-02975-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On March 15, 2020, Vail Resorts, Inc. ("Vail") closed all of its ski resorts in response to the rapidly emerging health and safety threat posed by the COVID-19 global pandemic.  Plaintiffs – each of whom purchased season ski passes in advance of the 2019-20 ski season that they were able to use throughout the fall and winter months – assert that they were harmed by not being able to ski after Vail ceased operations.  Plaintiffs contend the closure of Vail resulted in their being "quarantined," and entitles them to a refund under the ski pass insurance policy they purchased from defendant United Specialty Insurance Company ("USIC").

USIC offers an insurance policy (the "Policy") that protects against certain specified "perils" that prevent an insured from using her or his ski pass.  However, by its plain terms, the Policy does not cover an inability to use the ski pass after ski operations cease due to an unforeseen event.  Here, the undisputed March 2020 cessation of ski operations bars the claims asserted by plaintiffs herein.  In addition, while one of the specified perils under the Policy addresses the insured's inability to use his or her ski pass because he or she was "quarantined" (i.e. "You are … quarantined"), none of the plaintiffs alleges that he or she personally was quarantined, either during the coverage period, or otherwise.  Plaintiffs simply do not allege a loss recoverable under the plain terms of the Policy.[1]

Vail, like many ski resort operators, offers its patrons a choice of how to pay for access to its slopes (i.e., lift tickets): buy tickets each day at the resort, or buy a package in advance (i.e., a season or multi-day pass) for a discounted, nonrefundable price.  This latter option – prepay and save money – is a type of package that is not limited to ski resorts and is, indeed, one that is familiar to consumers in a wide range of goods and services.  Like any consumer, opting for the discounted purchase in advance requires the pass holder to accept that, for any number of reasons, he or she may not be able to utilize the pass enough to make it economical.  And while a ski season pass holder can also purchase pass insurance for a small additional fee, the Policy provides coverage in accordance

---

[1] That is not to say no consideration was given to ski pass holders disappointed by COVID's impact, as Vail offered 2019/20 season ski pass holders credits of up to 80% to put towards a pass of equal or greater value for the 2020/21 ski season. See https://www.epicpass.com/info/2019-2020-pass-holder-credit.aspx.

with its terms; that fee does not buy the pass holder a blanket guarantee that he or she will get maximized value on their pass.

The Policy is clear as to what specified "perils" provide the insured with a full or partial refund if the season pass holder is unable to use his or her pass. It is a fundamental principle of insurance law, moreover, that an insurer may choose to limit its coverage, and to insure against certain risks and not others. And USIC has done so here. The Policy insures only against a list of specified "covered perils," not against every event that might cause a skier to lose the use of his or her pass; the Policy also specifies when that coverage is in effect and when it is not. These terms are part of the bargain that season pass holders agree to accept when they purchase USIC insurance. Thus, to be entitled to reimbursement by USIC under the Policy, the insured must demonstrate that any loss of ski pass use not only occurred while coverage was in effect, but also that it was due to a risk that USIC agreed to take on.

Plaintiffs satisfy neither of these requirements. The plain terms of the Policy provide that upon cessation of the ski season due to an unforeseen event, the Policy's coverage also terminates. Vail's decision to close its resorts in March 2020 is indisputably just such a cessation, terminating coverage under the Policy. Moreover, the Policy expressly and unambiguously excludes coverage for losses occurring when coverage is not in effect. Because plaintiffs do not allege any loss predating Vail's decision to close its resorts, they have alleged no cognizable claim under the Policy.

Moreover, plaintiffs have not pleaded any occurrence that falls within the list of covered perils USIC agreed to insure against. Of the ten listed covered perils under the policy, only one covers resort closure – and that is only for closure due to "Natural Disaster," which is clearly defined in the Policy and does not include a pandemic. Notably, the complaint makes no attempt to invoke this provision, because it clearly does not provide coverage for plaintiffs' claims.

The remaining nine covered perils are all circumstances that may befall the insured himself or herself. Plaintiffs seek to bring themselves under the policy's coverage for a loss of ski pass used because "You [the insured] are … quarantined." Relying on a strained and wholly unfamiliar construction of the term, plaintiffs claim that Vail's closure somehow constituted a "quarantine." But even if that were a commonly held understanding of the term – and it most certainly is not – the

policy only covers a loss due to the *insured* being quarantined, i.e., individually placed in isolation due to concern that he or she might have, or have been exposed to, a communicable disease.  The complaint makes no attempt to plead that any of the plaintiffs was so isolated, and thus plaintiffs' claims that USIC wrongfully denied coverage must be rejected.

Plaintiffs' claims are inadequate in other ways as well.  Under the Policy, an otherwise valid claim entitles the insured to the cost of his or her pass less a deduction for days skied.  The complaint, however, fails to allege facts plausibly establishing that plaintiffs had skied infrequently enough to have incurred *any* compensable loss.  Moreover, even if the complaint did sufficiently allege a loss, it fails to plead facts establishing that plaintiffs' failure to utilize their passes more fully was due to the closure of the resorts and not some other reason.

But at bottom, plaintiffs' claims rest on the notion that, when Vail closed its resorts in March 2020, plaintiffs – and by logical extension, *every person in the world* – were by that exclusion from the Vail resorts "quarantined."  One need not scour through dictionaries to realize that this is an absurd use of the term that no one would ever think proper, let alone that it is the ordinary understanding.  The Policy plainly and unambiguously does not cover plaintiffs' alleged losses, and for that reason, all of plaintiffs' claims should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Vail operates over thirty ski resorts and ski areas in the United States.  ECF Dkt. # 20, Compl. ¶ 14.  Vail offers skiers various types of season ski pass packages that provide multiple-day access to one or more (or all) of Vail's resorts, either unlimited for the season (or for a week), or for a given number of days. *Id.*  While costs vary by pass type, annual pass costs range from approximately $979 to $319, weekly passes from $766 to $391 and multi-day passes from $766 to $67.  *Id.* ¶ 14.  Depending on pass type, the insurance premium ranged from $32 to as low as $12. *Id.* ¶ 18.

USIC is a property and casualty insurance company headquartered in Texas.  *Id.* ¶ 9.  By arrangement with Vail, USIC offers ski pass insurance to purchasers of Vail season ski passes.  *Id.* ¶ 15.  The insurance provides for a refund of the unused portion of the purchased ski pass if the skier's failure to use that portion is caused by certain enumerated perils (e.g., sickness, loss of

9

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION          CASE NO. 4:20-MD-02975-YGR
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF\

employment). *Id.* ¶ 2. The terms of the Policy for the 2019-20 ski season are laid out in a Certificate of Insurance (the "Certificate"). *Id.* ¶¶ 20-22 & Ex. A.

The named plaintiffs – Ann Hoak, John Nevraumont, and Sunit Anandwala – allege that they purchased season ski passes for the 2019-20 ski season, as well as ski pass insurance. *Id.* ¶¶ 6-8, 19-20. The complaint does not allege what type of pass each plaintiff purchased or what portion of his or her ski pass each used during the season.

On March 14, 2020, Vail announced that, due to concerns over the growing COVID-19 threat, all of its North American resorts would not open the next day, March 15, and would remain closed for a week. *Id.* ¶ 44; *see* USIC's concurrently filed Request for Judicial Notice ("RJN"), Ex. 1. Then, on March 17, Vail announced that its resorts would remain closed for the rest of the season. Compl. ¶ 46; RJN Ex. 2. Plaintiffs allege that "as a result of the closure" they were "deprived of the use of their Epic Passes." Compl. ¶ 48.

At some time prior to April 10, 2020, plaintiff Hoak submitted a claim under the Policy to USIC's claims representative, American Claims Management ("ACM"). *Id.* ¶ 60. By letter dated May 7, 2020, USIC (through ACM) denied Hoak's claim as not being covered by the Policy. *Id.* ¶¶ 65-66 & Ex. D.

On April 23, 2020, plaintiff Hoak filed a putative class action complaint against USIC in the District of Colorado. *See* Case No. 1:20-cv-01152 (D. Colo.), ECF Dkt. #1. Plaintiffs Nevraumont and Anandwala were added via an amended complaint filed May 18, 2020. *Id.* ECF Dkt. # 9. The complaint asserted claims against USIC for breach of the policy and for declaratory relief. *Id.*

On or about October 7, 2020, the Judicial Panel on Multidistrict Litigation transferred the *Hoak* action, along with six other actions (together with *Hoak*, the "Individual Actions") to this Court for pretrial proceedings. By order dated December 10, the Court appointed co-lead and interim class counsel. ECF Dkt. # 19. In that order, the Court stated that it "anticipates that all issues referenced in the Individual Cases will be addressed in a Consolidated Complaint and that the Individual Cases can be administratively terminated," *id.* at 2, and that "Plaintiffs shall file a Consolidated Complaint no later than December 24, 2020," *id.* at 3.

In accordance with the Court's direction, plaintiffs filed the Consolidated Class Action Complaint on December 24.  ECF Dkt. # 20.  The consolidated complaint narrows the collective cases to a single claim for breach of contract against USIC and a request for declaratory relief.  *See* Compl. ¶¶ 83-93.  Further, at plaintiffs' request, the Court ordered all of the Individual Cases "administratively closed."  ECF Dkt. # 22.

## ARGUMENT

As this Court has summarized, "[d]ismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Kime v. Adventist Health Clearlake Hosp.*, 254 F. Supp. 3d 1071, 1074 (N.D. Cal. 2018) (quoting *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)). "The complaint must plead 'enough facts to state a claim [for] relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79).  "Mere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.'" *Id.* at 1074-75 (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

In the Complaint, plaintiffs assert a claim for breach of contract and a related claim for declaratory relief regarding coverage under the Policy.  But plaintiffs' claims, however denominated, fail for the simple reason that they have pleaded no facts that demonstrate that they are entitled to any coverage under the Policy.

## I.     PLAINTIFFS HAVE NOT PLEADED FACTS PLAUSIBLY SHOWING A COVERED LOSS UNDER THE POLICY

Plaintiffs' primary claim is for breach of contract – i.e., plaintiffs claim that they are entitled to payment under the Policy and that USIC improperly has denied their claims.[2]  *See* Compl. ¶¶ 1-2;

---

[2] With respect to choice of law, it appears that the standards for interpreting insurance policies do not vary materially with respect to the issues before the Court on this motion.  In particular, all of the potentially relevant states support dismissal as a matter of law where the clear and explicit text of an insurance policy precludes coverage.  *See, e.g.*, *P & S, LLC v. Nat'l U. Fire Ins. Co.*, No. 14-

*id.* ¶ 71 ("USIC's denial is improper and in breach of the plain terms of the Certificate."). "The
elements of a cause of action for breach of contract under California law are: '(1) the existence of the
contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)
the resulting damages to the plaintiff.'" *Mudpie, Inc. v. Travelers Cas. Ins.*, __ F. Supp. 3d __, No.
20-cv-03213, 2020 WL 5525171, at *7 (N.D. Cal. Sept. 14, 2020) (quoting *Oasis W. Realty, LLC v.
Goldman*, 51 Cal. 4th 811, 821 (2011)). "[A]bsent an actual withholding of benefits due, there is no
breach of contract." *Id.* (quotation omitted). Thus, where a plaintiff has failed to allege facts that
show that benefits were due under the policy, his or her claim for breach of contract must be
dismissed. *Id.*

"Under California law, the interpretation of an insurance contract is a question of law for the
courts. While insurance contracts have special features, they are still contracts to which the ordinary
rules of contractual interpretation apply." *Mudpie*, 2020 WL 5525171, at *2; *see Sony Computer Ent.
Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008). "[T]he court must 'look
first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson
would ordinarily attach to it.'" *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, __ F. Supp. 3d
__, No. 20-CV-907, 2020 WL 5500221, at *3 (S.D. Cal. Sept. 11, 2020) (quoting *Waller v. Truck
Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)); *see also Sony*, 532 F.3d at 1012 (mutual intent of the
parties "is to be inferred, if possible, from the written provisions of the contract"). In addition, "[t]he
terms in an insurance policy must be read in context and in reference to the policy as a whole, with
each clause helping to interpret the other." *Sony*, 532 F.3d at 1012. "If the contractual language is
clear and explicit, it governs." *Id.*

"California courts have cautioned that language in a contract 'cannot be found to be
ambiguous in the abstract,' and courts should 'not strain to create an ambiguity where none exists.'"
*Mudpie*, 2020 WL 5525171, at *2 (quoting *Waller*, 11 Cal. 4th at 18-19). "The absence of a

---

cv-00735, 2015 WL 4550322, at *2 (D. Colo. July 29, 2015) (applying Colorado law), *aff'd*, 650
Fed. App'x 561 (10th Cir. 2016). Thus, for purposes of this motion only, defendant will for
simplicity's sake cite only to California law. *See Axis Reins. Co. v. Telekenex, Inc.*, 913 F. Supp.
2d 793, 800 (N.D. Cal. 2012). Defendant reserves the right, however, to argue for a different
applicable law to the extent there are material differences with respect to a given issue.

definition of a word or phrase in an insurance policy does not by itself necessarily create an ambiguity." *Hints v. Am. Family Life Assur. Co.*, No. 4:19-cv-03764-YGR, 2020 WL 2512234, at *4 (N.D. Cal. May 15, 2020). "Nor is [a term] ambiguous because of [d]isagreement concerning the meaning of a phrase, or the fact that a word or phrase isolated from its context is susceptible of more than one meaning." *State of Cal. v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012) (quotations and citations omitted). "[A] provision is ambiguous 'only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.'" *Sony*, 532 F.3d at 1012 (quoting *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1265 (1992)).

"It is well-established California law that [a]n insurer may select the risks it will insure and those it will not and a clear exclusion will be respected. Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. When a policy clearly excludes coverage, the court will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage. An insurer is entitled to limit its coverage to defined risks, and if it does so in clear language, [the court] will not impose coverage where none was intended." *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F. Supp. 1213, 1220 (C.D. Cal. 1997) (quotations and citations omitted). "'If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.'" *Hints*, 2020 WL 2512234, at *4 (quoting *Evans v. Safeco Life Ins.*, 916 F.2d 1437, 1441 (9th Cir. 1990)).

It is the insured's burden in the first instance to plead and prove that his or her claim falls within the terms of the policy. "Courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Waller*, 11 Cal. 4th at 16.

The Policy's coverage is defined as follows:

**PROPERTY INSURED AND COVERAGE LIMITS:** We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

1

2

**PERILS INSURED AGAINST:** Subject to the Exclusion and Coverage limits, the insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils ***occurring after the effective date of coverage***:

3

[list of perils as subparagraphs a) through j)]

4

ECF Dkt. #20-1, Ex. A, Certificate at 1.[3]

5

6

The time period for coverage is stated as follows:

**EFFECTIVE DATE OF COVERAGE:** This insurance will be effective immediately upon acceptance by us of the Premium and shall remain in effect until the last day of the Ski/Snowboard Season *or the date upon which ski operations are ceased due to an unforeseen event*, whichever is earlier.

7

8

9

10

*Id.* (emphasis added).  The "Ski/Snowboard Season" is defined as "the period starting on October 15, 2019 and ending on April 15, 2020."  *Id.* at 2.

11

12

The Policy also includes a number of exclusions, including the following:

13

**EXCLUSIONS:**  We do not cover any Loss caused by or resulting from:
***

14

f) Loss that occurs when this coverage is not in effect.

15

*Id.* at 1.

16

As is evident, the Policy is not an "all risk" or "open peril" policy – i.e., it does not cover loss

17

due to any unforeseen event that is not specifically excluded.  Rather, it is a "named peril" policy –

18

i.e., it provides coverage only if the insured suffers a loss that is caused by one of the enumerated

19

perils. *See Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989); Croskey, et al.,

20

*California Practice Guide: Insurance Litigation* § 6:250.  Because it is a "named peril" policy, it is

21

incumbent upon plaintiffs to plead (and ultimately to prove) that they suffered a loss caused by a

22

named peril. *See Morris v. Allstate Ins. Co.*, 16 F. Supp. 3d 1095, 1101-02 (C.D. Cal. 2014).  The

23

insured also must plead that its losses occurred during the period when coverage was in effect.  *See*

24

*Peterson Transp. v. Hudson Ins. Co.*, No. CV 20-663, 2020 WL 8028614, at *3 (C.D. Cal. June 1,

25

26

27

28

---

[3] The "Insuring Agreement" provides that "We will provide insurance under the Master Policy in consideration of your payment of the Premium."  Certificate at 1; *see* Compl. ¶ 26.  The Master Policy, which was included as an exhibit in the *Bradley* complaint, *see* No. 4:20-cv-07042, Doc. # 1, Ex. D, does not differ in any material way from the terms of the Certificate with respect to the scope of coverage, and the complaint does not plead otherwise.

14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF\                    CASE NO. 4:20-MD-02975-YGR

1   2020) (insured "has the burden of showing that the … loss occurred during the coverage period");

2   Plitt, et al., *Couch on Insurance* § 102:2 ("It is a time-honored principle that the insurer's obligation

3   to pay is contingent on a covered loss occurring during the policy period …. It is the insured's or

4   claimant's burden to establish this fact.").

5          Thus, in order to establish that benefits were due under the Policy (as required to state a

6   breach of contract claim), plaintiffs must plead facts plausibly establishing (1) that any loss of use of

7   their season ski pass occurred while coverage was in effect; (2) that a covered peril occurred; and

8   (3) that the alleged loss of use of their season ski pass was caused by the covered peril.  As discussed

9   below, plaintiffs' complaint fails on all three of these fronts.

10              1.   Plaintiffs have not pleaded a loss while coverage was in effect

11         It is elementary that, in order to recover on an insurance policy, the insured must plead facts

12  plausibly establishing that the alleged loss occurred during the time that coverage was in effect.  *See,*

13  *e.g.*, *Graham Plumbing & Drain Cleaning Inc. v. Colony Ins. Co.*, No. ED CV 19-1130, 2019 WL

14  6482920, at *4-5 (C.D. Cal. Oct. 17, 2019) (granting judgment on the pleadings to insurer where

15  plaintiff failed "to plausibly allege that 'property damage' occurred during the Policy's term of

16  coverage").  The complaint asserts that plaintiffs were "deprived of their use of their Epic passes" by

17  Vail's decision to end the ski season.  Compl. ¶ 48.  Even if that is true, however, there is no

18  coverage, because under the clear terms of the Policy (*see supra* at 14), its coverage terminated upon

19  the resort closure::

20             **EFFECTIVE DATE OF COVERAGE**: This insurance will be effective
             immediately upon acceptance by us of the Premium and shall remain in effect until
21           the last day of the Ski/Snowboard Season *or the date upon which ski operations are*
             *ceased due to an unforeseen event*, whichever is earlier.
22

23  Certificate at 1 (emphasis added).  Put simply, although the Policy provides a firm date (April 15)

24  beyond which coverage cannot extend, the insured passholder is by no means guaranteed the season

25  will last that long.  If a resort closes at an earlier date (a common occurrence depending on, e.g.,

26  weather conditions in the resort area), the insured may not make a claim for any allegedly "lost" ski

27  season after that closure date.

28

As the complaint makes clear, as of March 15, 2020, ski operations at all Vail Resorts were ceased for the season. Compl. ¶¶ 44, 46.  Moreover, the cessation of operations was clearly due to an "unforeseen event," namely, the COVID-19 pandemic.  By the Policy's plain language, therefore, coverage ceased on that day.  Plaintiffs' claimed loss of ski pass use *after* that time, therefore, falls outside the scope of the Policy's coverage.

This conclusion is confirmed by the fact that the Policy specifically excludes "Loss that occurs when this coverage is not in effect."  Certificate at 1, Exclusion (f).  Dismissal of a claim for coverage is appropriate where the plain terms of an exclusion apply to the facts alleged in the complaint.  *See, e.g.*, *Founder Inst. Inc. v. Hartford Fire Ins.*, __ F. Supp. 3d __, No. 20-cv-04466, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) (even assuming policy otherwise provided coverage, exclusion applied warranting dismissal).  Because plaintiffs' claimed losses occurred when coverage was no longer in effect, and are expressly excluded under the plain terms of the Policy, they have no viable claim under the Policy.  Their claims should for that reason be dismissed.

2.   Plaintiffs have not alleged facts establishing the occurrence of a covered peril

In addition, plaintiffs have not pleaded facts establishing any covered peril under the Policy. The complaint claims that Vail's decision to shut down its resorts as of March 15, 2020 was a "quarantine" that triggered coverage under the Policy.  *See* Compl. ¶¶ 49 ("Vail Resorts' decision to shut down its resort locations and exclude its passholders was a 'quarantine'"); 67 (implying that "Vail Resorts' decision to close the resorts" constitutes a quarantine); 78(a) (asserting common question of "whether the order and directive from Vail Resorts closing its resorts in the United States … constituted a Covered Peril, as a '"quarantine"'").  As discussed below, neither Vail's closure, nor any other event alleged in the complaint, is an occurrence that falls within the scope of the Policy's coverage.  This conclusion is compelled not only by the plain meaning of "quarantine" but by its place in the structure and context of the Policy as a whole.  *See Sony*, 532 F.3d at 1013-17 (examining the meaning of coverage provision in context and in light of the whole policy).

a.   There is no coverage for resort shutdown due to pandemic

To begin with, there is no coverage for a resort shutdown for any reason other than the single subparagraph (d), which is limited to closure due to a "Natural Disaster," which in turn is limited to

16

"flood, hurricane, tornado, earthquake, fire, wildfire, volcanic eruption, or blizzard that is due to natural causes." Certificate at 1. There is no coverage provided for other resort shutdowns, regardless of cause. Certainly, there is no coverage for a shutdown due to disease or pandemic, or for shutdown due to government order.[4] Indeed, provided it is not due to a "Natural Disaster," a business decision by Vail regarding the ski season – e.g., in the not-uncommon occurrence of a poor snow season – does not trigger coverage. The ski pass holder remains at risk for a season ending earlier than he or she might have hoped (or, at least, cannot look to the Policy for relief).

Nor is there any listed coverage for loss due to generally applicable governmental action, such as travel restrictions, curfews, or prohibitions or restrictions on the operation of certain businesses. Indeed, it is clear that subparagraph (d) aside, all of the other covered perils are occurrences specific to the insured.

   b.   The Policy covers quarantining only if targeted at a specific insured ski pass holder

Plaintiffs rest their claim for coverage entirely under subparagraph (e):

(e) *You are* subpoenaed, required to serve on a jury, hijacked, *quarantined* or your travel visa is denied.

Certificate at 1 (Exclusion (e)) (emphases added); *see* Compl. ¶¶ 32, 35-37, 39, 49. "You" means "the Insured, as the context requires." Certificate at 2. "Insured" is defined to mean "any person for whom the Premium has been paid and accepted by us." *Id.* at 1. "You," in other words, is the season ski pass holder (or, here, a plaintiff).

It should first be noted that the Policy does not state that the mere existence of a "quarantine" is a covered peril. Rather, the Policy only provides coverage if "*You* are … quarantined." *Id.* at 1, subparagraph (e) (emphasis added). "You" – the ski pass holder – is the object of the transitive verb "quarantined." Indeed, the complaint specifically acknowledges this: "peril (e) … expressly

---

[4] The complaint stresses that the Policy does not specifically *exclude* pandemics, government orders related to pandemics or disease control. *See* Compl. ¶ 38. Even to the extent this is true, it is irrelevant. As discussed above, the Policy is not "all-risk" coverage. Rather, the relevant question is whether the insured can show that his or her loss was caused by a specifically enumerated peril. *See Waller*, 11 Cal. 4th at 16 ("When an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.") (quotation omitted). Moreover, the Policy *does*, in fact, have an exclusion for "Loss caused by or resulting from … seizure or destruction under quarantine." Certificate at 1, Exclusion (h).

provided coverage if *the insured* was 'quarantined.'" Compl. ¶ 64.  And what it means "to

quarantine [a person]" is that it is to isolate that person from contact with others, due to a known or

potential infection of that person with a communicable disease, in order to prevent that person from

infecting others.

This is, first, confirmed by dictionary definitions, which the Court may consult to determine

the meaning of policy terms, always keeping in mind that the terms must be evaluated in the context

of the whole policy.  *See Sony*, 532 F.3d at 1013; *Brosamer & Wall, Inc. v. Indian Harbor Ins. Co.*,

2020 WL 1031139, at \*11-12 (N.D. Cal. 2020); *Morris*, 16 F. Supp. 3d at 1102. For example, the

*American Heritage Dictionary of the English Language* defines the transitive verb form of

"quarantine," as "to isolate in quarantine," and in turn defines the noun form as "A condition, period

of time, or place in which a person, animal, plant, vehicle, or amount of material suspected of

carrying an infectious agent is kept in confinement or isolated in an effort to prevent disease from

spreading"), *see* RJN Ex. 3; *see also Cassell v. Snyders*, 458 F. Supp. 3d 981, 1002 (N.D. Ill. 2020)

(rejecting claim that limitations on gatherings were a quarantine because "[b]y definition, a

"quarantine" refers to "a state of enforced isolation") (*citing Quarantine*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/quarantine).

The complaint cites to numerous excerpts from dictionary definitions as well, and to the

extent the complaint cites *verb* forms of "quarantine," those definitions confirm that to "quarantine"

a person is to isolate or detain *that person*.  *See* Compl. ¶ 36 ("to detain in or exclude by quarantine";

"to isolate from normal relations"; "to exclude, detain or isolate for political, social or hygienic

reasons").[5]

---

[5] The complaint also cites to definitions of the *noun* "quarantine" in an apparent attempt to justify a more expansive reading of the Policy.  Compl. ¶¶ 36-37.  Notably, it omits the Merriam-Webster definition ("a state of enforced isolation") relied upon in *Cassell*.  *See* 458 F. Supp. 3d at 1002. Moreover, as discussed above, the Policy does not provide that the mere existence of something that could be called a "quarantine" triggers coverage; rather, the *insured* must "[be] quarantined." Plaintiffs may not rely on the dictionary definition of a single word in isolation while disregarding the context in which the word is used in the Policy.  *See Sony*, 532 F.3d at 1014; *Brosamer*, 2020 WL 1031139, at \*12.  Moreover, the complaint deploys even those definitions in an illogical fashion.  For example, even granting that "quarantine is commonly understood to be associated with measures aimed at the restraint of activities of person to prevent the spread of a disease," Compl. ¶ 37, it does not follow that *every* such measure is therefore properly termed a "quarantine."

Numerous courts confirm that the plain meaning of to "quarantine" a person is to detain or isolate *that person* from others because of *that person's* exposure to or infection with a communicable disease.  *See McGhee v. City of Flagstaff*, No. CV-20-08081, 2020 WL 2308479, at *3 (D. Ariz. May 8, 2020) (to place a person under quarantine is to restrict that person's movements to prevent spread of disease); *Cassell*, 458 F. Supp. 3d at 1002 (to quarantine someone is to place them in "a state of enforced isolation"); *County of Butler v. Wolf*, __ F. Supp. 3d __, No. 2:20-cv-677, 2020 WL 5510690, at *20 (W.D. Pa. Sept. 14, 2020) (quarantines "slow the spread of infectious diseases by isolating the infected and others exposed to the disease"); *Amato v. Elicker*, 460 F. Supp. 3d 202, 220 (D. Conn. 2020) (quarantines "limit a person's right to assemble with *any* other person"); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 229 n.17 (D. Md. 2020) ("it does not appear that requiring individuals to stay at home except for essential activities, which includes engaging in outdoor exercise, constitutes a quarantine"); *Murphy v. Lamont*, No. 3:20-CV-0694, 2020 WL 4435167, at *11 (D. Conn. Aug. 3, 2020) (orders that did not "subject[] any person to confinement in his or her home or otherwise restrict[] any person's freedom of movement" were not quarantines); *Liberian Community Ass'n v. Lamont*, 970 F.3d 174, 181-82 (2d Cir. 2020) (persons returning from Ebola-infected areas were quarantined at home and not allowed to leave); *see also Ex parte Culver*, 187 Cal. 437, 442 (1921) ("'Quarantine as a verb' means 'to keep persons, when suspected of having contracted or been exposed to an infectious disease, out of a community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community.'") (quotation omitted).

It is clear, therefore, that to "quarantine" an individual is to isolate that individual from others because that individual has, or potentially has, a communicable disease.  Perhaps to state the obvious, one would never say that the *other* persons from whom the exposed individual is isolated are being "quarantined."  Thus, to bring himself or herself within the coverage under subparagraph (e), a ski pass holder would have to show that he or she was unable to use his or her ski pass because of being isolated from others due to his or her infection with or exposure to a communicable disease.

This understanding is further strengthened by the context of the Policy and how the perils are listed.  The other perils listed in subparagraph (e) are all obstacles to travel specifically and

19

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION        CASE NO. 4:20-MD-02975-YGR
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF\

1   personally experienced by an individual (subpoena, jury duty, visa denial) or at most a limited group

2   of which the insured is a part (hijacking).  None of the perils is one experienced broadly by the

3   public as a whole.  This placement in the Policy confirms that it is the insured himself or herself that

4   must be "quarantined."  *See Sony*, 532 F.3d at 1013-14 (reviewing policy's enumeration of covered

5   acts and rejecting "expansive" definition of act that "disregards the term's placement" in that list);

6   *Adams v. Hartford Cas. Ins.*, No. CV 15-05700, 2015 WL 12642305, at *9 (C.D. Cal. Nov. 23,

7   2015) (interpreting coverage provision term in light of the terms with which it was grouped).

8            c.   There are no facts pleaded that any plaintiff was quarantined

9            If any of the plaintiffs actually had been subject to a quarantine while coverage was in effect

10   such that he or she was unable to use his or her ski pass, he or she would have presumably been

11   entitled to coverage.  But none of the plaintiffs alleges such facts, i.e., no plaintiff alleges that he or

12   she was specifically isolated due to having COVID-19 or being potentially exposed.  No plaintiff,

13   therefore, has alleged that he or she "[was] quarantined."

14            Primarily, the complaint rests on the claim that the voluntary shutdown of the Vail Resorts

15   was a quarantine.  *See* Compl. ¶ 49.  A shutdown of a resort is in no way a quarantine of any insured

16   ski pass holder.  That is an absurd use of the term, and the complaint cites to no support whatsoever

17   for deploying "quarantine" in this fashion.

18            In addition, the complaint appears to assert that "various orders and directives" by President

19   Trump and "state and local authorities" restricted travel and other activities.  *Id.* ¶ 40.  To the extent

20   that the complaint suggests that such "orders" trigger coverage, *see id.* ¶ 78b, plaintiffs are mistaken.

21   To begin with, while the complaint identifies a number of COVID-related orders by Colorado

22   authorities, none of these orders purported to confine individuals to their homes, and none saw fit to

23   characterize the actions taken as a "quarantine."  *See* Compl. ¶¶ 41-45; RJN Exs. 4-7.

24            Even were it otherwise, however, such orders, directed at the entire public, do not target and

25   isolate specific individuals believed to have COVID, as required to constitute a "quarantine."  It

26   simply stretches beyond recognition the plain meaning of the term to say that the entire populace,

27   when urged (or even ordered) to restrict movement, has thereby been "quarantined."

28

20

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION          CASE NO. 4:20-MD-02975-YGR
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF\

Numerous federal courts have reached the same conclusion, having considered and rejected claims that COVID-related restrictions constitute a "quarantine." For example, the court in *County of Butler* was faced with a constitutional challenge to the "stay-at-home" orders issued by Pennsylvania Governor Wolf on March 23, 2020 (and subsequently). *See* 2020 WL 5510690, at *16. These orders applied generally to Pennsylvania residents and required them to stay at home except to obtain or provide essential services or for outdoor activities. *Id.* Preliminarily, the court asked whether the orders could be considered a "quarantine" and thus should be judged by the standards of the state's broad quarantine authority. *Id.* at *19-20.

The court rejected this characterization. The court first noted the historical deployment of quarantines "to slow the spread of infectious diseases by isolating the infected and others exposed to the disease." *Id.* at *20. The court then referred to Pennsylvania's statutory definition of "quarantine" as "[t]he limitation of freedom of movement of persons or animals who have been exposed to a communicable disease for a period of time equal to the longest usual incubation period of the disease in such manner as to prevent effective contact with those not so exposed." *Id.* Applying these understandings of the term, the court stated

> The plain language of the statute makes clear that the lockdown effectuated by the stay-at-home orders is not a quarantine. A quarantine requires, as a threshold matter, that the person subject to the "limitation of freedom of movement" be "exposed to a communicable disease."

*Id.* The court further noted that even the state's own witnesses conceded that the stay-at-home orders could not be characterized as a "quarantine."

A district court in this circuit reached a similar result with regards to a challenge to certain of Arizona's COVID-related orders. *See McGhee*, 2020 WL 2308479. The plaintiff in *McGhee* challenged an Executive Order directing Arizonans to limit time away from home except for a number of exceptions – including work, outdoor exercise, and "constitutionally protected activities," *see id.* at *1-2 – as violating the state's quarantine laws. The court rejected this challenge because the order "does not place Plaintiff or anyone else under 'quarantine,'" noting that a person subjected to quarantine is strictly limited in his or her ability to leave the premises or to have visitors, whereas the order in question "does not prevent any person from engaging in activities, leaving their homes,

21

1   or visiting friends or family." *See id.* at *3; *see also Cassell*, 458 F. Supp. 3d at 1002-03 (orders

2   limiting size of religious gatherings were not a "quarantine"); *Murphy*, 2020 WL 4435167, at *11

3   (orders limiting gatherings and imposing restrictions on retail operations did not constitute a

4   quarantine); *Antietam Battlefield KOA*, 461 F. Supp. 3d at 229 n.17 (stay at home orders not a

5   quarantine).

6         These courts' holdings comport with the plain meaning of "quarantine."  A restriction on

7   activities for disease mitigation, generally applicable to the public as a whole, does not constitute a

8   "quarantine" at all, much less a quarantine of any individual member of that public.  Thus, even if

9   the complaint had pleaded specific orders that plausibly caused any of the plaintiffs to lose use of his

10  or her ski pass – and as discussed above, it does not – that still would not show that any plaintiff

11  thereby had been "quarantined."

12        In sum, the Policy unambiguously only covers instances where the insured ski pass holder is

13  quarantined due to exposure, or potential exposure, to a communicable disease such as COVID-19.

14  It does not extend to general recommendations or restrictions on travel or activities, nor to the

15  shutdown of the Vail ski resorts. Having pleaded no facts plausibly establishing the occurrence of

16  any covered peril, plaintiffs fail to establish that they were entitled to any benefits under the Policy.

17        3.  <u>Plaintiffs do not allege facts plausibly showing causation</u>

18        As shown above, plaintiffs have not alleged even the occurrence of any peril named in the

19  Policy.  But even if they had, the Policy does not pay benefits simply for the occurrence of a named

20  peril.  Rather, the Policy only pays for "Loss of use of your Ski Season Pass *if caused by* any one of

21  the following unforeseen perils…" Certificate at 1 ("PERILS INSURED AGAINST") (emphasis

22  added).  Indeed, the complaint specifically acknowledges that the Policy covers the "risk of not

23  being able to use the pass *due to the occurrence of a covered peril.*" Compl. ¶ 2 (emphasis added).

24  Each plaintiff must therefore plead that he or she suffered a loss caused by the occurrence of a

25  named peril.  *See Mesa Underwriters Specialty Ins. v. Hyds, Inc.*, No. CV 19-5792, 2020 WL

26  2608148, at *4 (C.D. Cal. May 14, 2020) (granting insurer judgment on the pleadings where, *inter*

27  *alia*, "there are no allegations that property damage resulted from an 'occurrence'").

28

To begin with, plaintiffs have not adequately pleaded facts establishing that they suffered a loss at all.  The Policy provides that an insured who cannot use his or her ski pass due to a covered peril may receive a return of the pass fee less a deduction for time already used (depending on whether the pass was one for unlimited access or a set number of days).  *See* Certificate, at 1 ("Property Insured and Coverage Limits").  In other words, an insured may, if he or she has utilized the pass enough, not be entitled to any recovery even in the event of a covered peril.  The complaint, however, alleges neither what type of ski pass any plaintiff purchased, nor how much time (if any) he or she skied, and thus fails to substantiate that any plaintiff suffered any loss at all.

Assuming they could plead otherwise, however, plaintiffs also have made no attempt to plead facts plausibly establishing that their alleged failure to use any remaining time on their passes was due to the Vail resorts closure.  There are many reasons unique and specific to each ski pass holder as to why he or she would not have used all of his or her ski pass benefits. There is no reason why any ski pass holder's failure to use all of his or her pass should be presumed to be due to either the resort closure or governmental orders (even if either of these were covered by the Policy).

That is particularly true given the timing of the shutdown.  When the resorts closed on March 15, the season had been running for months.  While there was at most one month left in the season as defined by the Policy for coverage purposes, *see* Certificate at 2 (defining "Ski/Snowboard Season" as October 15, 2019 – April 15, 2020), as previously discussed there was no guarantee, or even expectation, that any resort's season would actually extend that long.  Or, put another way, undoubtedly for many ski pass holders *their* season was completely over, and would have remained so regardless of how long any of the resorts remained open.  To allow a pass holder to collect under the Policy because of a subsequent occurrence (even if it were a covered peril) that was not the reason why the pass holder did not use up his pass benefit would give the holder an unwarranted windfall.  And it would contradict the terms of the Policy, which only covers loss "*caused by*" a covered peril.  Thus, to recover plaintiffs must plead, and ultimately prove, that a loss of ski pass benefits that was due to a covered peril (and not for other, uncovered reasons).  The complaint lacks any allegations plausibly establishing this requirement.

23

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF\
CASE NO. 4:20-MD-02975-YGR

Plaintiffs' failure to allege facts plausibly establishing that they suffered a loss caused by a covered peril while the Policy was in effect precludes their claim for breach of contract.  *See Pappy's*, 2020 WL 5500221, at *6 (dismissing complaint for failure to plead facts establishing coverage); *Mudpie*, 2020 WL 5525171, at *7 (same); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co.*, __ F. Supp. 3d __, No. 2:20-cv-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (same).

## II.    BECAUSE THE POLICY DOES NOT PROVIDE COVERAGE, THE CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED

In their second claim for relief, plaintiffs seek a declaration that USIC's "failure to timely pay" the alleged losses was a "material breach of the ski pass insurance agreement."  Compl. ¶¶ 90-93.  Because, as demonstrated above, there is no coverage under the Policy, plaintiffs' claim for such relief also must be dismissed.  *See Mudpie*, 2020 WL 5525171, at *7; *Mark's*, 2020 WL 5938689, at *5.

## CONCLUSION

As demonstrated above, plaintiffs have failed to plead facts establishing that any alleged loss occurred when coverage was in effect; that there was any covered peril as defined in the Policy; or that, even if there were, that their alleged losses were caused by that covered peril.  Each of these independent reasons is sufficient to demonstrate that there is no coverage under the Policy for plaintiffs' claimed losses, and thus no breach of contract.  The Consolidated Class Action Complaint, including all claims of plaintiffs, therefore should be dismissed in its entirety with prejudice.

Dated: January 22, 2021                                    **DUANE MORRIS LLP**


                                              By:    /s/ Justin J. Fields
                                                     Thomas J. Cahill (admitted *pro hac vice*)
                                                     James J. Regan (admitted *pro hac vice*)
                                                     Justin J. Fields

                                                     Attorneys for Defendant
                                                     UNITED SPECIALTY INSURANCE
                                                     COMPANY

24